THE WESTON FIRM
GREGORY S. WESTON (239944)
MELANIE A. PORTER (253500)
5127 Lotus Street
San Diego, CA  92107
Telephone:     619 255 7098
Fax:               480 247 4553
greg@thewestonfirm.com
melanie@thewestonfirm.com

<u>Counsel for Plaintiffs</u>

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| STEVE ADACHI, SHARLYNE BRAUDE, JEREMY CARSON, ERICKA GARDEA, MICHAEL GARDEA, PARAG GUPTA, SUGANDHA GUPTA, GLENN HENDERSON, MARY HENDERSON, STEVE HENDERSON, VICTOIRE HOVLAND, DOUGLAS KIM, YOGENDRA KUMAR, IMAAN MOHAMMADPOUR, RIYE PARK, GREG PERRAULT, EILEEN PEVIANI, TED SUMIDA, and JESSICA VANDERLAN, on behalf of themselves and all others similarly situated, | Case No: 08 CV 2052 JM WMc **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS** Judge: The Hon. Jeffrey T. Miller Date: January 23, 2009 Time: 2:00 p.m. Location: Courtroom 16 |
|                                        Plaintiffs,            v. | |
| CARLYLE/GALAXY SAN PEDRO, L.P., CARLYLE SAN PEDRO GP, L.L.C, GALAXY SAN PEDRO, L.L.C., CARLYLE SAN PEDRO, L.L.C., CARLYLE REALTY PARTNERS IV, L.P.,  GALAXY COMMERICAL HOLDING, L.L.C., RAFFI COHEN, and MARA ESCROW COMPANY, | |
|                                        Defendants. | |

1

2

**TABLE OF AUTHORITIES**

3

**CASES**

4

*Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638 (Cal. App. 6th Dist. 2004) ..................................................................................................................5

*ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160 (N.D. Cal. 2002)................................14

*Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254 (9th Cir. 2005).......................................12

*Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83 (2000)............................2, 6, 13

*Badie v. Bank of Am.*, 67 Cal. App. 4th 779 (Cal. App. 1st Dist. 1998) .........................8, 10, 17

*Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066 (1999) ........................................................3

*Bruni v. Didion*, 160 Cal. App. 4th 1272 (Cal. App. 4th Dist. 2008).........................................7

*Circuit City Stores v. Adams*, 279 F.3d 889 (9th Cir. 2002).......................................................2

*Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005) .................................................10, 11

*Duffens v. Valenti*, 161 Cal. App. 4th 434 (Cal. App. 4th Dist. 2008)..................................4, 16

*Ellis v. McKinnon Broad. Co.*, 18 Cal. App. 4th 1796 (Cal. App. 4th 1993) .............................8

*Flores v. Transamerica Homefirst*, 93 Cal. App. 4th 846 (Cal. App. 1st Dist. 2001) ...........7, 14

*Gelow v. Cent. Pac. Mortg. Corp.*, 560 F. Supp. 2d 972 (E.D. Cal. 2008) ................................2

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) ....................................................................8

*Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244 (9th Cir. 1994) ........................................3

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003)...............................................2

*Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309 (Cal. App. 4th Dist. 1986)...................11

*Janda v. T-Mobile*, USA, Inc., 2006 U.S. Dist. LEXIS 15748 (N.D. Cal. Mar. 17, 2006) ................................................................................................................13

*Magna Development Co. v. Reed*, 228 Cal. App. 2d 230 (Cal. App. 1st Dist. 1964) ................18

*Mattei v. Hopper*, 51 Cal. 2d 119 (1958).................................................................................17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) ..............................2

i

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)................................6, 14

*Pardee Construction Co. v. Superior Court*, 100 Cal. App. 4th 1081 (Cal. App. 4th Dist. 2002) .........................................................................................................7

*Pokorny v. Quixtar, Inc.*, 2008 U.S. Dist. LEXIS 28439 (N.D. Cal. Mar. 31, 2008) ...................4

*Roskamp Manley Assocs. v. Davin Dev. & Inv. Corp.*, 184 Cal. App. 3d 513 (Cal. App. 2d Dist. 1986)................................................................................................18

*Sperry v. Crompton Corp.*, 8 N.Y.3rd 204 (2007) ....................................................................3

*Sun Kyung Ahn v. Merrifield Town Ctr. Ltd.*, 2008 U.S. Dist. LEXIS 93242 (E.D. Va. Oct. 27, 2008)................................................................................................16

*Tex. Indus. v. Radcliff Materials*, 451 U.S. 630 (1981) ............................................................3

*Trend Homes, Inc. v. Superior Court*, 131 Cal. App. 4th 950 (Cal. App. 5th Dist. 2005) ..........................................................................................................11

*Wagner Construction Co. v. Pacific Mechanical Corp.*, 41 Cal. 4th 19 (2007)........................18

*Wilson v. Norbreck LLC*, 2007 U.S. Dist. LEXIS 26144 (E.D. Cal. Apr. 9, 2007)....................5


**STATUTES**

15 U.S.C. § 1703 ...............................................................................................................15

15 U.S.C. § 1705 ...............................................................................................................15

15 USC § 26......................................................................................................................5

15 USCS § 1701 ................................................................................................................15

15 USCS § 1701(5) ............................................................................................................19

15 USCS § 1703(c).............................................................................................................15

Cal. Bus. & Prof. Code § 16750(a) ..................................................................................5, 19

Cal. Civ. Code § 1670.5......................................................................................................1

Cal. Code Civ. Proc. § 1281.2(b).......................................................................................15

Cal. Code Civ. Proc. § 1284.3............................................................................... 1, 3, 10, 12

Cal. Code Civ. Proc. § 1284.3(a) .......................................................................................11

ii

*Adachi et al v. Carlyle Galaxy San Pedro, L.P. et al*; Case No. 08 CV 2052 JM WMc
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS
OR STAY PROCEEDINGS

# I.     Introduction

On November 24, 2008 Plaintiffs filed their complaint for fraud and violations of state and federal antitrust and consumer protection laws ("Complaint"). On December 2, 2008 Defendants filed their Motion to Compel Arbitration and to Dismiss or Stay Proceedings ("Motion").

The arbitration clause upon which Defendants base their Motion is substantively unconscionable for denying Plaintiffs' right to punitive damages for fraud claims in arbitration, statutory protections from "loser pays" provisions under Cal. Code Civ. Proc. § 1284.3, and mandatory attorneys' fees and treble damages under the Sherman and Cartwright Acts.

Additionally, the arbitration clause is procedurally unconscionable as an adhesionary contract. It came as a pre-printed form contract in small, hard-to-read type within page after page of difficult legal jargon. Not surprisingly, Defendant Carlyle/Galaxy San Pedro, L.P. ("Carlyle"), the only Defendant listed on the arbitration clause, admits not one buyer in the 300-plus-unit building has ever negotiated, modified, or eliminated the arbitration clause from the purchase contract. See Part IIIC, *infra* at 9.

The arbitration clause's pattern of unconscionable provisions cannot be saved by severance. The clause's multiple problems are symptomatic of the contract's unlawful purpose. When a contract is permeated by illegality, neither Cal. Civ. Code § 1670.5 nor the Federal Arbitration Act authorizes reformation by augmentation.

Finally, the arbitration clause is not severable from the purchase contract, which is revocable for violations of federal law and as an illusory agreement. Plaintiffs have placed Defendants on notice they seek to revoke the agreement by letter and by the filing of this action.

Thus, Defendants' motion to compel arbitration should be denied.

**II.     The arbitration clause is unenforceable for illegality.**

    **A.     The arbitration clause forces Plaintiffs to forfeit their statutory right to seek punitive damages.**

The purchase contract provides that:

The arbitrator shall be authorized to provide any remedies or relief in law or in equity, ***other than punitive damages***, which the courts of the State of California could issue based upon the same claims, for any cause of action that is the basis of the arbitration.

Purchase Contract at ¶ 11(h) (emphasis added).

"By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985). California courts have consistently concluded that arbitration clauses containing supposed "waivers" of statutory rights are unconscionable and unenforceable, especially when such illegal terms are pre-printed by corporations and presented to counterparties of substantially less sophistication in contracts of adhesion. See, e.g., *Circuit City Stores v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003); *Gelow v. Cent. Pac. Mortg. Corp.*, 560 F. Supp. 2d 972 (E.D. Cal. 2008) (declining to enforce arbitration clauses).

    Similarly, the California Supreme Court provides that Supreme Court precedent "disallows forms of arbitration that in fact compel claimants to forfeit certain substantive statutory rights." *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 99-100 (2000) (voiding an arbitration clause in an employment contract that failed to afford the full range of statutory remedies, including punitive damages and attorneys' fees). In direct contrast to the arbitration clause in Defendants' contract, the *Armendariz* court specifically concluded that "***The principle that an arbitration agreement may not limit statutorily imposed remedies such***

*as punitive damages and attorney fees appears to be undisputed*." 24 Cal. 4th at 103 (emphasis added). See, e.g., *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1086 (1999); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244 (9th Cir. 1994).

Indeed, the unconscionable language of the arbitration clause effectively insulates Defendants from statutory liability for antitrust damages claims. Under the Sherman and Cartwright Acts, treble damages are automatic, not discretionary. In antitrust suits, treble damages are intended to function as forms of punitive damages. See *Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct."); *Sperry v. Crompton Corp.*, 8 N.Y.3rd 204 (2007) ("[T]hreefold damages should be regarded as a penalty.") (ruling that treble damages under New York antitrust law must be treated as punitive damages).

**B.    The arbitration clause contains an illegal "loser pays" cost-shifting provision.**

The purchase contract provides that:

> In any action, proceeding or arbitration arising out of this Agreement (other than claims for construction defects), the prevailing party shall be entitled to reasonable attorneys' fees and costs.

Purchase Contract at ¶ 13.

However, Cal. Code Civ. Proc. § 1284.3 clearly states that:

> No neutral arbitrator or private arbitration company shall administer a consumer arbitration under any agreement or rule requiring that a consumer who is a party to the arbitration pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration, including, but not limited to, the fees and costs of the arbitrator, provider organization, attorney, or witnesses.

Defendants cannot apply for the aid of the Court to enforce the terms of an illegal cost-shifting provision. As drafted by Defendants, the arbitration clause "contains language…that is directly contrary to [California law]. Contracts contrary to express statutes or to the policy of

express statutes are illegal."[1] *Duffens v. Valenti*, 161 Cal. App. 4th 434, 454 (Cal. App. 4th Dist. 2008) (denying enforcement of arbitration agreement).

In *Pokorny v. Quixtar, Inc.*, the plaintiff independent business owners sued the defendant multi-level marketing program for allegedly operating an illegal pyramid scheme in violation of the federal RICO statute. 2008 U.S. Dist. LEXIS 28439 (N.D. Cal. Mar. 31, 2008). The court denied the defendants' motions to compel arbitration containing a "loser pays" provision:

> Practically speaking, a "loser pays" provision makes arbitration a much greater financial risk than litigation. The [clause] thus requires [plaintiffs] to incur greater risk in the prosecution of statutorily-protected rights. This undoubtedly discourages [plaintiffs] from demanding arbitration, and therefore favors Quixtar substantially. … Courts have held such provisions unenforceable in California and other states. See e.g., *Veliz v. Cintas Corp.*, No. 03-1180, 2004 WL 2452851, at *22, 23, 37, (N.D. Cal. April 5, 2004) (invalidating "loser pays" provision as to plaintiffs from California, Colorado, and New Jersey). The Court finds that the "loser pays" provision…unfairly favors Quixtar and is therefore unconscionable.

*Pokorny*, 2008 U.S. Dist. LEXIS 28439 at *58-59.

**C.     The arbitration provision violates the statutory provisions that entitle prevailing plaintiffs in antitrust actions to attorneys' fees.**

The purchase contract states that:

> Seller shall advance the fees and costs necessary to initiate arbitration, with the costs and fees, including ongoing costs and fees to be paid as agreed by the parties, or, if the parties cannot agree upon the payment of the ongoing costs and fees, then as determined by the arbitrator, ***with the overall costs and fees of the arbitration to be ultimately borne as determined by the arbitrator.***

Purchase Contract at ¶ 11(c) (emphasis added).

However, the Sherman Act states:

---

[1] Here and elsewhere, internal citations have been omitted.

4

In any action under this section in which the plaintiff substantially prevails, the court **shall** award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

15 USC § 26 (emphasis added).

Similarly, the Cartwright Act states:

Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter…**shall** be awarded a reasonable attorneys' fee together with the costs of the suit.

Cal. Bus. & Prof. Code § 16750(a) (emphasis added).

Under the Sherman and Cartwright Acts, awarding attorney's fees to prevailing plaintiffs is mandatory, not discretionary. This award is available only to prevailing plaintiffs and not to prevailing defendants. "The public policy implicit in the unilateral fee-shifting provision…is to encourage injured parties to broadly and effectively enforce the Cartwright Act in situations where they otherwise would not find it economical to sue." *Wilson v. Norbreck LLC*, 2007 U.S. Dist. LEXIS 26144, *8-9 (E.D. Cal. Apr. 9, 2007).

By reducing the incentives for private parties to enforce the antitrust acts, the arbitration clause not only violates Plaintiffs' private rights, but also contravenes public policy. "Employing general contract law principles, courts will refuse to enforce arbitration provisions that are unconscionable or contrary to public policy." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 651 (Cal. App. 6th Dist. 2004) (reversing enforcement of arbitration agreement that imposed unconscionable costs on plaintiff employees, as "statutory …rights may be transgressed as much by the imposition of undue costs as by outright denial").

In *Nagrampa v. MailCoups, Inc.*, a plaintiff franchisee sued a defendant franchisor under the UCL, claiming that the cost conditions in the arbitration clause effectively insulated the corporation from statutory liability. The Ninth Circuit reversed an order enforcing the clause, as

"California courts refuse to enforce arbitration provisions on public policy grounds if they impede the enforcement of unwaivable statutory rights. … Under California law, a right or cause of action created for a public purpose cannot, by private agreement, be waived, contravened, burdened, or subjected to procedural shortcomings that would preclude its vindication." 469 F.3d 1257, 1292 (9th Cir. 2006).

## III.  The arbitration clause is procedurally unconscionable.

### A.  The arbitration clause is a part of an adhesionary contract.

California courts begin examining a contract for evidence of unconscionability by "inquir[ing]…whether the contract is one of adhesion." *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 113 (2000). An adhesionary contract is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.*

As in *Armendariz*, the Plaintiff purchasers of mid-range condominium units in a middle-class neighborhood were unrepresented by counsel in purchasing their units and lacked knowledge of exactly what "arbitration" meant or entailed (see Declarations of Alice Chang, Douglas Kim, Jennifer Red, James Rodriguez, and Ted Sumida ("Buyers' Decls.") at ¶ 1), while the Defendant developers were corporate entities of significant size, substantial commercial sophistication, and vastly superior bargaining strength. Additionally, the purchase contracts were pre-printed forms prepared by Defendants and presented to Plaintiffs by their sales agents, who did not appear to be authorized to negotiate their terms and who did not in any event do so. See Buyers' Decls. at ¶ 2.

In *Flores v. Transamerica Homefirst*, a California court found a consumer reverse mortgage agreement to be adhesionary because "HomeFirst unquestionably had superior

---

6

*Adachi et al v. Carlyle Galaxy San Pedro, L.P. et al*; Case No. 08 CV 2052 JM WMc
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS
OR STAY PROCEEDINGS

bargaining strength in that it presented its preprinted documents, cast in generic language, to plaintiffs for signature. Plaintiffs were offered no opportunity to negotiate. … Plaintiffs were never informed that the documents, much less the arbitration provisions, were negotiable." 93 Cal. App. 4th 846, 854 (Cal. App. 1st Dist. 2001). Similarly, Plaintiffs did not negotiate any portion of the contract, nor were they informed were negotiable. See Buyers' Decls. at ¶ 2.

Likewise, a California appellate court defined a home warranty contract for 17 separate properties as adhesionary because "The documents were preprinted and 'voluminous.' There was no negotiation. Plaintiffs understood that the documents were being presented to them on a 'take it or leave it' basis. … [P]laintiffs generally were not familiar with…'legalese.'" *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1282 (Cal. App. 4th Dist. 2008). Similarly, Plaintiffs were presented with large binders of legal documents, many in tiny, single-spaced font, with no guidance as to their legal significance. See Buyers' Decls. at ¶ 3.

Defendants argue the arbitration clauses were not adhesionary contracts because Plaintiffs had "the opportunity to look elsewhere for a more favorable contract." Motion at 8. However, Defendants marketed Vue as "San Pedro's first waterfront high-rise condominiums." Declaration of Gregory S. Weston ("Weston Decl."), Ex. A. Thus, when Plaintiffs signed the purchase contracts, Defendants were the only game in town for anyone in the market for such a residence.

In *Pardee Construction Co. v. Superior Court*, the defendant developer made similar arguments in its motion to compel the plaintiff purchasers to submit their claims to judicial reference. 100 Cal. App. 4th 1081, 1088 (Cal. App. 4th Dist. 2002). In affirming the denial of the motion, the appellate court quoted the trial court's conclusion that:

> [S]ince each buyer was buying a house, not a piece of sporting equipment or some other regular type of product, factors such as location, view, and set-back made it

a pretty unique purchase, one that for most people is the biggest purchase they will ever make in their life. … [A]s a practical matter, Pardee's argument that plaintiffs can go elsewhere if they don't like it flies in the face of the uniqueness of a home.

*Id.*[2]

### B.    The arbitration clause is procedurally unconscionable for surprise.

"Surprise" occurs when an unsophisticated party to an adhesionary contract signs the contract unaware of the existence or importance of a provision, even if it "could have read the contract more closely." *Ellis v. McKinnon Broad. Co.*, 18 Cal. App. 4th 1796, 1804 (Cal. App. 4th 1993); cited with approval in *Gentry v. Superior Court*, 42 Cal. 4th 443, 469 (2007). Here, Plaintiffs affirm they were unaware of what arbitration would entail. See Buyers' Decls. at ¶ 1.

In *Badie v. Bank of Am.*, the plaintiff consumers sued the defendant bank for violating the Unfair Competition Law. A California appellate court declared the ADR clause in the bank's contract unenforceable, as the bank's sales practices were "not designed to achieve knowing consent to the ADR provision." 67 Cal. App. 4th 779, 805 (Cal. App. 1st Dist. 1998).

### C.    The fact that Defendants have *never* negotiated, modified, or eliminated the arbitration clause from the purchase contract is further evidence of its procedural unconscionability.

Defendant Carlyle admits that it has *never* negotiated, modified, or eliminated an arbitration clause from a purchase contract for Vue Condominiums in response to a request by a buyer. See Weston Decl. at ¶ 2. The lack of *any* attempted negotiation of any arbitration

---

[2]  To support the proposition that Plaintiffs' pre-printed form contracts were not adhesionary contracts, Defendants also cite the irrelevant *Allen v. Smith*, 94 Cal. App. 4th 1270 (Cal. App. 4th Dist. 2002). In invalidating the liquidated damages clause for violating California law, the *Allen* court made no mention of adhesion or unconscionability.

*Adachi et al v. Carlyle Galaxy San Pedro, L.P. et al*; Case No. 08 CV 2052 JM WMc
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS

provision by any purchaser party in Defendants' 318-unit development is strong evidence of Defendants' superior bargaining power and substantial commercial sophistication.

In *Pardee Construction Co. v. Superior Court*, the court denied a defendant developer's petition for a writ of mandate instructing the lower court to enforce a judicial reference provision against the plaintiff purchasers in a class action, concluding the lack of any attempted negotiation by any purchaser party was clear evidence of procedural unconscionability. 100 Cal. App. 4th 1081 (Cal. App. 4th Dist. 2002).

> By thus acknowledging that none of the hundreds of home purchasers struck out the judicial reference provision, Pardee has effectively admitted the parties' agreements were adhesionary. Further…plaintiffs were unlikely to have significant economic bargaining power against developer Pardee. Moreover, since judicial reference provisions were contained in agreements for purchase of all homes in Pardee's large development, plaintiffs had little choice other than to sign those agreements as presented by Pardee.

*Pardee*, 100 Cal. App. 4th at 1081 and 1087.

**IV.    The arbitration clause is substantively unconscionable because it benefits only Defendants in practice and violates state and federal laws and public policy.**

**A.    The arbitration clause is one-sided.**

"Substantively unconscionable terms…may generally be described as unfairly one-sided." *Gentry v. Superior Court*, 42 Cal. 4th 443, 469 (2007). In contracts of adhesion, substantive unconscionability "need not be present in the same degree" as procedural unconscionability:

> [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. … At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. … Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.

> *Id.*

*Adachi et al v. Carlyle Galaxy San Pedro, L.P. et al*; Case No. 08 CV 2052 JM WMc
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS**

1   In Defendants' adhesionary contract, the degree of substantive unconscionability does not need

2   to be especially high (even though it is) to render the arbitration clause unenforceable.

3         While the arbitration clause appears to be mutual on its face, California courts should

4   examine the effects of consumer contracts that are "styled as…mutual" when "it is difficult to

5   envision the circumstances under which [a contract] provision might negatively impact" the

6   sophisticated corporate party. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 161 (2005)

7   (finding a mutually-worded condition on paper to be an illegal exculpatory clause in practice).

8

9         In *Badie v. Bank of Am.*, a California appellate court found a consumer ADR contract to

10  be unconscionable by examining its effects, concluding that "While it is true that customers

11  were given the equal opportunity to 'impose' [ADR] procedures on the Bank, since the Bank

12  favored them anyway, the customer's exercise of the option is not likely to be viewed by the

13  Bank as an unwelcome turn of events." 67 Cal. App. 4th 779, 806 (Cal. App. 1st Dist. 1998).

14  Likewise, Defendants' arbitration agreement, while "styled as…mutual" on paper, benefits only

15
    Defendants in practice.
16

17        **B.    The arbitration clause is substantively unconscionable because of its illegal
                  terms.**
18

19        As detailed in Part II, *supra*, the arbitration clause is also substantively unconscionable

20  for plainly repudiating Plaintiffs' right to punitive damages for fraud claims, statutory

21  protections from "loser pays" provisions under Cal. Code Civ. Proc. § 1284.3, and mandatory

22  attorneys' fees and treble damages under the Sherman and Cartwright Acts.

23        **C.    The arbitration clause is substantively unconscionable because it contains a
                  *de facto* class action waiver.**
24

25        Defendants highlight the fact that the arbitration clause does not contain one type of

26  unconscionable term, namely a class action waiver. In *Discover Bank v. Superior Court*, the

27  California Supreme Court held that consumer arbitration clauses with class action waivers are

28

                                                    10

unconscionable and unenforceable. 36 Cal. 4th 148 (2005). As a practical matter, Defendants' punitive damages prohibition, "loser pays" provision, and illegal limitation on mandatory attorneys' fees in antitrust actions heavily diminish the incentive for private attorneys to accept and litigate Plaintiffs' claims in class-wide arbitration. By decreasing the probability that Plaintiffs can obtain class representation, Defendants' arbitration clause limits "the only effective way to halt and redress" a corporation's practice of cheating a large number of consumers out of a relatively small amount of money—an effect held impermissible in *Discover Bank*. See *Discover Bank*, 36 Cal. 4th at 156.

## V.  The *Izzi* and *Trend Homes* decisions, which enforced arbitration clauses in condominium purchase contracts, present substantially different sets of facts.

Defendants reach 22 years back and four times cite *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309 (Cal. App. 4th Dist. 1986), in which a California court enforced an arbitration clause containing a "loser pays" provision. However in 2002 *Izzi* was superseded by the enactment of Cal. Code Civ. Proc. § 1284.3(a), which prohibits arbitrators from ordering awards "under any agreement or rule requiring that a consumer who is a party to the arbitration pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration." Thus, the "loser pays" provision in the *Izzi* arbitration clause could not be enforced today.

Defendants do not cite, but Plaintiffs were able to locate, a more recent case enforcing a jury trial waiver clause in a condominium purchase contract. In *Trend Homes, Inc. v. Superior Court*, a California court granted a defendant developer's petition to enforce a judicial reference provision. 131 Cal. App. 4th 950 (Cal. App. 5th Dist. 2005). However, the court specifically concluded that judicial reference presents less danger than arbitration, and is thus presumably subject to less scrutiny:

*Adachi et al v. Carlyle Galaxy San Pedro, L.P. et al*; Case No. 08 CV 2052 JM WMc
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS

We note that when the parties agree to judicial reference, as opposed to arbitration, they retain nearly all of their procedural and constitutional rights, since the rules of evidence apply to the proceeding, which is conducted like a trial, and the parties retain appellate rights. The only right the parties agree to give up is the right to a jury trial. Thus, judicial reference does not present the same danger…—loss of a trial with full procedural and constitutional rights—that exists with respect to arbitration.

*Trend Homes*, 131 Cal. App. 4th at 964.

Additionally, the language of the *Trend Homes* contract was distinct from Defendants' arbitration clause. Specifically, the clause did not prohibit punitive damages or plainly contravene the consumer protections of Cal. Code Civ. Proc. § 1284.3 or the attorney fee provisions of the Sherman and Cartwright Acts. In direct contrast to Defendants' exclusion of punitive damages, the court concluded that the clause was not substantively unconscionable precisely because "The provision does not limit the…type of relief real parties can obtain." *Trend Homes*, 131 Cal. App. 4th at 961.

## VI.   The arbitration clause contains so many illegal and unconscionable terms that it cannot be saved by severance.

"In instances where [a corporation] engages in an insidious pattern of seeking to tip the scales in its favor…by inserting numerous unconscionable provisions in an arbitration agreement, courts may decline to sever the unconscionable provisions." *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1262 (9th Cir. 2005) (voiding entirety of arbitration clause in employment contract). By restricting Plaintiffs' right to punitive damages in arbitration, statutory protections under Cal. Code Civ. Proc. § 1284.3, and mandatory attorneys' fees under federal and state antitrust laws, the arbitration agreement violates both statutory rights and state and federal policy. The Court should deter Defendants' "insidious pattern of…inserting numerous unconscionable provisions in an arbitration agreement" by declining to sever them.

In *Armendariz v. Found. Health Psychcare Servs.*, the California Supreme Court voided an entire arbitration clause rather than severing its two illegal conditions, as the presence of more than one unlawful provision 1) indicated unlawful purpose and 2) made salvaging the clause through severance impossible:

> First, the arbitration agreement contains more than one unlawful provision. … Such multiple defects indicate a systematic effort to impose arbitration…not simply as an alternative to litigation, but as an inferior forum that works to the [corporation's] advantage. In other words, given the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose.
>
> Second…there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement. Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms. Civil Code section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute.

24 Cal. 4th 83, 124-125 (2000)

In a recent class action, a California court declined to sever the unconscionable conditions from an arbitration clause with a telephone service. Like Defendants' arbitration clause, the T-Mobile arbitration clause repudiated the plaintiffs' right to punitive damages and restricted attorneys' fees. The court concluded that the illegal conditions "so permeate[] [the] arbitration clause with an unlawful purpose that these offending provisions cannot be severed or restricted because to do so would essentially result in reforming [the] arbitration clause." *Janda v. T-Mobile*, USA, Inc., 2006 U.S. Dist. LEXIS 15748 at *25 (N.D. Cal. Mar. 17, 2006).

Similarly, in *Nagrampa v. MailCoups, Inc.*, the Ninth Circuit invalidated an entire arbitration agreement instead of only its two illegal terms because "we must conclude that [the existence of a valid] clause does not save the arbitration provision from a finding of invalidity. The MailCoups arbitration provision is so permeated by substantive unconscionability that it

*Adachi et al v. Carlyle Galaxy San Pedro, L.P. et al*; Case No. 08 CV 2052 JM WMc
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS
OR STAY PROCEEDINGS

cannot be cured by severance or any other action short of rewriting the contract." 469 F.3d 1257, 1294 (9th Cir. 2006).

In *ACORN v. Household Int'l, Inc.*, a court categorized the multiple unconscionable conditions in a consumer arbitration contract between the plaintiff borrowers and the defendant lenders as "eliminat[ing] the financial incentive to bring a claim" and "increas[ing] the disincentive to vindicate any alleged violations." 211 F. Supp. 2d 1160, 1174 (N.D. Cal. 2002). Defendants' unconscionable fee-shifting clauses and illegal waivers of punitive damages and attorneys' fees do the same. The court concluded that "The interlocking nature of these hindrances indicates that the purpose of the arbitration agreement is not to transfer claims to a more expeditious forum, but to deter Defendants' customers from bringing claims. As such, the agreement's purpose is tainted with illegality and severance is not appropriate." *Id.*

If the illegal aspects of the arbitration agreements are simply severed, then Defendants' "insidious pattern" of inserting unconscionable conditions into consumer contracts will not be deterred. "[I]t strikes us as woefully unfair to plaintiffs to allow [Defendants]…to refute the unconscionable aspects of the arbitration agreement which [Defendants themselves] drafted and from which [Defendants] stood to benefit." *Flores v. Transamerica Homefirst*, 93 Cal. App. 4th 846, 857-858 (Cal. App. 1st Dist. 2001) (declining to sever an unconscionable provision from an arbitration agreement).

**VII.    The arbitration clause is not severable from the purchase contract, which is revocable under federal law.**

The Defendant developers violated the Interstate Land Sales Full Disclosure Act ("ILSFDA") by failing to file a full and complete Statement of Record with the U.S. Secretary of Housing and Urban Development, failing to furnish a Property Report to Plaintiff purchasers,

14

*Adachi et al v. Carlyle Galaxy San Pedro, L.P. et al*; Case No. 08 CV 2052 JM WMc
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS
OR STAY PROCEEDINGS

and failing to clearly state the rights of Plaintiffs to revoke their purchase contracts if their Property Reports were not provided.[3] See 15 U.S.C. §§ 1703 and 1705.

ILSFDA provides that:

> In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this title [15 USCS §§ 1701 et seq.] and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right.

15 USCS § 1703(c).

Thus, 1) ILSFDA requires certain developers to provide Property Reports; 2) Defendants failed to furnish such Reports; and 3) the statute states that non-compliant contracts are revocable.

Cal. Code Civ. Proc. § 1281.2(b) provides that:

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that…[g]rounds exist for the revocation of the agreement.

Under California law, Defendants' violation of ILSDFA constitutes grounds for the revocation of the purchase contract, and thus the arbitration clause as well.

In a recent and closely analogous decision, a California appellate court affirmed the trial court's denial of a dating service's motion to compel arbitration because the service's contract lacked obligatory language under state law. *Duffens v. Valenti*, 161 Cal. App. 4th 434, 451 (Cal.

---

[3]   Neither the named Plaintiffs nor any other purchasers who contacted Mr. Weston in connection to Vue Condominiums recalled receiving a Property Report. See Buyers' Decls., ¶ 4. Additionally, none of the purchasers could produce a copy of the Property Report. These federal ILSFDA reports would have been memorable, as federal law requires the front cover to contain "a warning, centered, in 1/2 inch capital letters in red type…which reads as follows: READ THIS PROPERTY REPORT BEFORE SIGNING ANYTHING." 24 CFR 1710.105 (2003).

App. 4th Dist. 2008). Like Plaintiffs' purchase contract, the court concluded that "these 'consulting agreements' are part of a small class of contracts regulated by specific statutes that expressly render nonconforming contracts void and unenforceable." *Duffens*, 161 Cal. App. 4th at 441.

> [I]f a statute prescribes the only method in which a valid contract can be made, a contract that fails to follow that method is void. Omitting required provisions, as here, does not follow the requirements of statute.

> *Duffens*, 161 Cal. App. 4th at 455.

Furthermore, the *Duffens* court concluded that "the agreements do not belong within the general category allowing severable arbitration clauses, because of the importance of the omitted provisions." *Duffens v. Valenti*, 161 Cal. App. 4th at 456.

> We cannot find the arbitration provisions in this case to be severable from these contracts under these authorities. The dating service statutes represent the Legislature's intent to regulate in a particular manner such contracts for dating services, and the statutes operate to exclude such contracts for dating services from the scope of the general rule that a court will refrain from determining the legality of voidable contracts that contain an arbitration clause, and will instead allow an arbitrator to do so. The defects in these agreements are central to the policy of the statutes, and the express language of the statutes regarding unenforceability applies to the arbitration clauses as well.

> *Id*.

Like the dating service statutes, ILSFDA "represent[s] the Legislature's intent to regulate" a class of contracts in a specific manner. See *Sun Kyung Ahn v. Merrifield Town Ctr. Ltd.*, 2008 U.S. Dist. LEXIS 93242 (E.D. Va. Oct. 27, 2008).[4] Thus, "[t]he defects in [Plaintiffs'

---

[4] "Through ILSFDA's disclosure requirements, Congress intended to ensure that, prior to purchasing certain types of real estate, a buyer is apprised of the information needed to make an informed decision. … In the event a seller fails to provide the purchaser with the required property report, § 1703(c) allows a purchaser to revoke the non-exempt contract[.]" *Sun Kyung*, 2008 LEXIS 93242 at *14, *19 (granting plaintiff purchasers partial summary judgment on ILSFDA claims)

purchase agreements] are central to the policy of the statutes, and the express language of the statutes regarding unenforceability applies to the arbitration clauses as well."

**VIII.   The arbitration clause is not severable from the purchase contract, which is illusory and unenforceable.**

An agreement that "leaves a party free to perform or to withdraw from the agreement at his own unrestricted pleasure…is deemed illusory." *Mattei v. Hopper*, 51 Cal. 2d 119, 122 (1958). The purchase contract provides that:

> Should Seller fail to complete the Property within thirty-six (36) months from the date of this Agreement, Buyer's remedies will be limited to termination of this Agreement and Escrow and refund of all amounts deposited into Escrow by Buyer, without deduction, within fifteen (15) calendar days. Buyer acknowledges that, prior to the close of escrow, Seller may make certain changes in the legal documents described below in Paragraph 13 and changes in plans for development of the Project, or change the manner or content of the offering of units in the Project. If prior to the close of escrow any of the described changes occur, Seller will provide Buyer with written notice of same, and Buyer agrees that his sole remedy at that time will be to terminate this Agreement, request cancellation of escrow and receive a full refund of all amounts deposited hereunder.

Purchase Contract at ¶ 6

By permitting Defendant Carlyle to fail to perform under the purchase contract at no cost, the contract leaves the construction of the condominium to the discretion of the developers. "As a general rule, an agreement that provides that the price to be paid, or other performance to be rendered, shall be left to the will and discretion of one of the parties is not enforceable" as illusory. *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 797 (Cal. App. 1st Dist. 1998) (denying enforcement of arbitration agreement).

In *Roskamp Manley Assocs. v. Davin Dev. & Inv. Corp.*, a California appellate court affirmed the conclusion that a subordination clause in a real estate contract was illusory and unenforceable, as the clause left the amount of principal and interest to the discretion of the

developer. 184 Cal. App. 3d 513 (Cal. App. 2d Dist. 1986). Although the developer argued the court could establish the material terms of the subordination clause by examining the custom and usage of the real estate industry, the court found that while "evidence of custom and usage may be introduced to interpret a contract, it may not be used to create one." *Roskamp*, 184 Cal. App. 3d at 520. The court concluded that:

> [W]here a party seeks specific performance of a contract for the sale of real property, terms must be complete and certain in all particulars essential to its enforcement and must express each material term in a reasonably definite manner.
>
> *Id.*

Further, full disclosure and waivers are insufficient to allow enforcement of illusory contracts. Another court affirmed a summary judgment that invalidated a real estate purchase contract which failed to specify the terms and conditions of the sale, even though the parties purported to "waive" this uncertainty in the contract. *Magna Development Co. v. Reed*, 228 Cal. App. 2d 230 (Cal. App. 1st Dist. 1964). The court concluded the purchase contract was unenforceable because "A party to a contract cannot erase uncertainty therefrom by waiving such uncertainty and thereby restore its contractual validity." *Magna*, 228 Cal. App. 2d at 243.

"An action to compel arbitration is in essence a suit in equity to compel specific performance of a contract" *Wagner Construction Co. v. Pacific Mechanical Corp.*, 41 Cal. 4th 19, 29 (2007). Defendants cannot seek specific performance of the arbitration clause without expressing the material factors of the purchase contract—date of delivery, documentation of the development, plans for the project, and manner and offering of units at Vue—"in a reasonably definite manner."

To avoid the invalidation of agreements as illusory, courts sometimes conclude that contracts remain enforceable "if the exercise of [discretionary] power is subject to prescribed or

implied limitations," such as the implied covenant of good faith and fair dealing. *Badie*, 67 Cal. App. 4th 779 at 797 (declining to save the arbitration clause with implied covenants). Here, however, the developers have specifically "disclaimed" all implied common law warranties:

> This Agreement constitutes the entire and complete Agreement of the parties hereto. … The only representations, agreements and warranties made by Seller are those set forth in writing in this Agreement and in the Final Subdivision Public Report.

> Purchase Contract at ¶ 20.

**IX.    Even if Plaintiffs' claims against Carlyle are ordered into arbitration, Plaintiffs' claims against Defendants not party to the arbitration clause should not be dismissed.**

To the extent the Court concludes the arbitration clause is valid and enforceable, only Plaintiffs' claims against Defendant Carlyle should be ordered into arbitration. Defendants Carlyle San Pedro GP, L.L.C., Carlyle San Pedro, L.L.C., and Carlyle Realty Partners IV, L.P., Galaxy San Pedro, L.L.C. ("Nonsignatory Defendants") admit they are not signatory parties to the arbitration agreements and have "no contractual relationship with any purchaser of condominium units at the Vue." See Weston Decl. at ¶ 3.

Further, Plaintiffs' claims against Nonsignatory Defendants are independent of their claims against Carlyle, as both ILSFDA and the Cartwright Act provide for liability against parties that lack privity of contract, i.e., indirect sellers.

ILSFDA, 15 USCS § 1701(5), defines a "developer" as:

> any person who, *directly or indirectly*, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision

Similarly, the Cartwright Act, Cal. Bus. & Prof. Code § 16750(a), provides that:

> [An] action may be brought by any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt *directly or indirectly* with the defendant.

(emphasis added)

**X.      Conclusion**

For the foregoing reasons, Defendants' Motion should be denied.

DATED: January 14, 2009                    Respectfully submitted,

                                           s/Gregory S. Weston

                                           GREGORY S. WESTON
                                           THE WESTON FIRM

                                           Counsel for Plaintiffs